

JUN 1 5 2020
AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND    DEPUTY

# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

CHARLES HEAD,
Plaintiff

- v -

ALL MAILROOM OFFICERS
OF FCI CUMBERLAND PRISON;
WARDEN J.R. BELL; SIS
OFFICER S. EIRICH; ONE
UNKNOWN SIS OFFICER OF
FCI CUMBERLAND; U.S. DEPT.
OF JUSTICE; and FEDERAL
BUREAU OF PRISONS, sued
in their individual and
official capacities,
Defendants.

Case no.

Hon.

VERIFIED COMPLAINT
FOR DAMAGES AND
INJUNCTIVE RELIEF

## I. Introduction

1. This is a BIVENS action filed by a federal inmate alleging violations of his constitutional rights to receive mail unread from courts and his lawyers, and uncensored social mail. Plaintiff also seeks injunctive relief under the Freedom of Information Act and the Administrative Procedures Act and damages.

-1-

## II. Jurisdiction

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. sections 1331 and 1343.

## III. Parties

3. Plaintiff Charles Head at all times relevant was confined by the Bureau of Prisons at FCI Cumberland located in Cumberland, Md.

4. Defendant Warden J.R. BELL is the warden of FCI Cumberland.

5. Defendant S. Eirich is a correctional officer employed by the Bureau of Prisons ("BOP") and supervisor of FCI Cumberland's SIS department to include Defendant ONE UNKNOWN SIS OFFICER OF FCI CUMBERLAND.

6. Defendants ALL MAIL ROOM OFFICERS OF FCI CUMBERLAND are correctional officers employed by the BOP and working at FCI Cumberland.

## IV. Exhaustion of Available Remedies

7. The BOP requires an inmate to complete and submit a "BP-8" form in order to exhaust his administrative remedies.

8. Although various other forms are readily available and located in the inmate housing unit, BP-8 grievance forms are not. Inmates wishing to obtain a BP-8 must submit a request to his unit team staff.

9. In practice at FCI Cumberland, requests to staff for BP-8 grievance forms are screened by the officer at unit team who receives the request. It is common for BP-8 forms to be denied to an inmate based upon the context of the complaint, thus the administrative remedy process is not available for certain matters as the unit team staff member will always ask what the grievance is for and then fail to provide the BP-8 form if he or she doesn't approve of the basis for the complaint.

10. During the month of May 2020 I asked the C-Unit Team Manager, Mr. Holler, for a BP-8 form in person.

-3-

11. I made two email requests to Mr. Holler for a BP-8 form in order to exhaust my availiable administrative remedies during the month of May. Attached to the complaint as Attachment A is one of the two email requests I submitted to Mr. Holler in May 2020. As of the date of this filing I have not received a BP-8 form from Mr. Holler or any other Unit Team C staff in response to my various above-stated requests.

12. On 5-27-2020, I was told by Defendant "ONE UNKNOWN SIS OFFICER" that he would ensure that I would receive a BP-8 form. He said this to me in front of Defendant S. EIRICH and numerous other correctional officers present who witnessed UNKNOWN SIS OFFICER open and read my legal mail. I'd made a complaint about his actions to him and was told that a grievance form, a "BP-8", would be provided. As of the date of this filing, no BP-8 form has been provided to me from any of the prison staff.

13. On 5-29-2020, I emailed the warden explaining that my legal mail is being

-4-

unlawfully censored, read, and otherwise mishandled by the prison staff. Attached to this complaint as Attachment B is the email I sent to the warden, Defendant WARDEN J.R. BELL. The entirety of the statements made in Attachment B are incorporated by reference, made facts in this complaint, and sworn to be true and correct under penalty of perjury by the undersigned.

11. Plaintiff submitted a written request to the Mail Room Supervisor of FCI Cumberland on 5-29-2020 requesting that the "mail room staff cease from opening [his] legal mail." Attached as Attachment C is a copy of the email. A second email was sent to the Mail Room Supervisor on 5-29-2020 clarifying that Plaintiff's grievance had to do with Mail Room Staff opening and reading his legal material outside his presence.

12. Considering the above articulated set of circumstances, Plaintiff has fully exhausted all available administrative remedies as the prison staff refuses to provide him with the necessary form (BP-8).

-5-

Facts

13. In April 2020, I was told by my case manager, Melissa Washington, not to further assist inmates in filling out any paperwork. I assume that this demand was related to my handwriting being found on various other inmates requests submitted to her — she is the C-Unit Team Case Manager — concerning CARES ACT and/or Compassionate Release requests. She further explained that she would not acknowledge any requests in which my handwriting is noted in the future.

14. Sometime during the afternoon on 4-30-2020, Timothy Torok, my cellmate, was told by Melissa Washington that "they received [his] legal mail package and determined that it was not authorized and destroyed it." I was in the cell at the time due to the national BOP lockdown related to COVID-19 so I heard everything she said to TOROK.

15. TOROK asked her for a BP-8 form — I told him to do so — but WASHINGTON stated "I don't do BP-8's," as she walked away.

- 6 -

16. I assisted TOROK in submitting a written complaint to the warden concerning Melissa Washington's refusal to provide him with a BP-8 form and the staff destroying his legal mail on 4-30-2020. The warden rejected the grievance because, amongst other things, TOROK failed to file a BP-8 form through Unit Team staff; a catch-22.

17. On 5-1-2020, TOROK received an IR — Attachment D — from Defendant SIS OFFICER S. EIRICH who alleged that "On May 1, 2020, at approximately 9:00 AM, SIS concluded an investigation into a legal mail parcel that arrived in the Mail room [sic] on March 30, 2020...."

18. In reviewing the incident report ("IR") I recognized that it contained material misrepresentations, the most obvious being the fact that it was the Unit Team Staff, not SIS Staff — whose job it is to conduct mail investigations — who opened and then destroyed TOROK's mail.

19. I explained to TOROK that Melissa Washington

-7-

or Mr. Holler likely got a call from the warden concerning TOROK's complaint about his legal mail being destroyed by them and one of them called SIS to make everything seem legitimate. EIRICH, in turn, wrote TOROK an IR.

20. On 5-7-2020, the unit manager, Mr. Holler conducted a one-man "Committee" hearing on TOROK's IR, recommended TOROK receive a loss of good time credit and privileges, and referred TOROK's IR to the DHO officer for a hearing.

Constitutionally Protected Acts

21. Irate that the prison staff was purposely harassing TOROK, who suffers from severe psychological issues, I helped him by writing his declaration for use at the DHO hearing (based upon his assertions) and assisting him with preparing for the hearing. Attached as Attachment E is the "INMATE REQUEST TO STAFF and the DECLARATION that I assisted TOROK in preparing for his DHO hearing. It was submitted to Mr. HOLLER on 5-10-2020 for submission to the DHO.

- 8 -

22. TOROK was unable to reach his lawyer, ADAM CARRO, so I made the "mistake" of communicating with Mr. CARRO via email — I'm an orderly, thus out of my cell during the lockdown to sanitize — about the issues that his client, TOROK, was having with SIS OFFICER S. EIRICH and the C-UNIT TEAM STAFF.

23. Plaintiff also made the "mistake" of mailing ADAM CARRO, Inmate TOROK's Incident Report because TOROK's mail was being obstructed by FCI Cumberland staff. Plaintiff explained to ADAM CARRO that Defendant SIS OFFICER S. EIRICH claimed that "SIS staff contacted Mr. Carro via telephone..." and that Carro had supposedly stated to EIRICH or SIS STAFF that "Torok was an ex client of his, but he never sent a parcel to FCI Cumberland to inmate Torok."

24. Attorney ADAM CARRO communicated with Plaintiff that he would take care of the problem. CARRO then made multiple calls to Warden BELL.

-9-

25. ADAM CARRO contacted the prison as a result of Plaintiff's communication with CARRO. Attorney Carro spoke with two C-Unit Team staff members including TOROK's counselor and unit manager explaining that he had never spoken to SIS staff at all, never claimed Torok was an "ex client," and that he indeed had sent TOROK the legal mail parcel at issue in TOROK's incident report.

26. ADAM CARRO also sent Defendant Warden J.R. BELL an email explaining that Defendant SIS OFFICER S. EIRICH's incident report contained false information as TOROK is his client and he never spoke to SIS staff telling SIS that he'd never sent TOROK mail because he actually had sent TOROK said legal mail parcel.

27. As a result of the above described facts TOROK's DHO hearing, in which ADAM CARRO asked prison staff to be a witness, was abandoned.

## Retaliation

28. At FCI Cumberland, SIS staff and Mail Room staff work together on mail related investigations. On information and belief, SIS OFFICER S. EIRICH conspired with FCI Cumberland MAIL ROOM STAFF to obstruct Plaintiff's mail parcels from being delivered to him in retaliation for Plaintiff communicating with ADAM CARRO about EIRICH's falsified incident report number 3394145 concerning TOROK's mail.

29. Since the time I communicated with ADAM CARRO and assisted TIMOTHY TOROK with his DHO hearing, at least four parcels of Plaintiff's mail have been censored and/or obstructed by Defendant MAIL ROOM STAFF without legitimate cause and in retaliation.

30. In May of 2020, Plaintiff's grandmother, Mattie McGee, sent him a parcel of mail. Said mail was never delivered to him by staff nor did he receive any mail rejection notice as required by 28 CFR Section 540.13.

-11-

31. On or about 5-15-2020, Attorney Erin Radekin sent Plaintiff properly marked "special mail" (legal mail) as defined by 28 C.F.R. Section 540.18. Said mail was never received by Plaintiff nor was any mail rejection notice given to him as mandated by 28 CFR Section 540.13.

32. On or about 5-16-2020, a paralegal named Michael Warnken sent me a mail parcel containing public records and court filings that I'd prepared and submitted to federal courts (from Pacer.gov). Michael Warnken informed me that the prison returned the mail he sent to me back to him on or about 5-26-2020. I received no rejection notice for said mail from BOP staff.

33. On 5-27-2020, the events described in Attachment B occured whereas ONE UNKNOWN SIS OFFICER OF FCI CUMBERLAND opened Plaintiff's legal mail, read the contents with an unknown lieutenant, and refused to deliver said special mail — properly marked as per 28 CFR Section 540.18 and from an attorney.

— 12 —

34. On 5-27-2020, after arriving to the office of the lieutenant, Plaintiff was told to wait outside as the lieutenants had no idea why Plaintiff was summoned.

35. While sitting on the bench outside the lieutenant's office, Plaintiff observed SIS Officer S. EIRICH and two other correctional officers approaching the area. Defendant UNKNOWN SIS OFFICER smirked then stated to Plaintiff: "Don't you know you're on mail restriction."

36. Defendant SIS Officer S. EIRICH said to Plaintiff " Head! So you've been helping guys with legal work, eh," as he motioned me towards the door to the LT's office. Plaintiff responded in the affirmative and entered the lieutenant's office again.

37. Defendant UNKNOWN SIS OFFICER began questioning Plaintiff about the white envelope in his hand, ultimately asking if the mail parcel was Plaintiff's "legal mail" to which Plaintiff stated

that it was his legal mail parcel — upon inspection indicating Plaintiff's name as the addressee, his paralegal and lawyer's address in the return address area, and the words: " SPECIAL MAIL — OPEN ONLY IN THE PRESENCE OF THE INMATE."

38. UNKNOWN SIS OFFICER laughed and made a few disparaging remarks before saying that Plaintiff's mail was not legal mail.

39. One of the two lieutenants sitting at the only two desks in the room stated: " You got to be the dumbest criminal that ever lived."

40. UNKNOWN SIS OFFICER opened the mail parcel, pulled out all the contents and spent about five minutes reading the material with the lieutenant sitting at the desk on the right side of the office. While reading the pages the SIS OFFICER asked Plaintiff questions about the material he was reviewing and stated that Plaintiff was not allowed to have the material.

-14-

41. Plaintiff explained that the material was indeed legal mail (special mail) material and that the reason his lawyer's office sent the correspondence in a white envelope without any sticker labels is due to his telling the paralegal working there, named Jennifer Alexander, that the prison rules now forbid anything other than white envelopes and stickers are prohibited. The paralegal emailed me about the rules and I told her exactly what the BOP handbook stated concerning special mail.

42. Attached as Attachment G is a BOP form (BP-AO.328) that I received in August 2019 from Officer D. CLARK rejecting my mail from a relative due to "COLORED PAPER" which is not appropriate. D. CLARK is not an Associate Warden which BOP Policy Statement requires for rejection of inmate correspondence. (Program Statement 5265.14)

43. Attachment H is a BP-A0328 signed by AW Michael Sample rejecting a "Greeting Card."

- 15 -

44. Defendant UNKNOWN SIS OFFICER told Plaintiff that his legal mail parcel was being "returned to sender" and would not be given to him. As stated supra, BOP policy does not authorize UNKNOWN SIS OFFICER, who is not an Associate Warden, to reject or return Plaintiff's mail.

45. UNKNOWN SIS OFFICER was contacted by Jennifer Alexander about ten minutes after he called Alexander's office to determine if Plaintiff's legal material originated from that law office. Jennifer Alexander informed SIS OFFICER that the special mail parcel did indeed come from their office and that it should be delivered to Plaintiff.

46. UNKNOWN SIS OFFICER never delivered Plaintiff's special mail correspondence and, on information and belief, he returned Plaintiff's mail to the sender the day after he opened it.

47. UNKNOWN SIS OFFICER's actions in censoring, reading, obstructing, and

willfully refusing to deliver Plaintiff's legal mail offends the First Amendment of the U.S. Constitution, the Sixth Amendment of the U.S. Constitution, and denies him the right to court access under U.S. Constitution Amendment Five. That Defendant's actions ran afoul of the Bureau of Prisons own Policy Statement evidences he should have known that his actions violated clearly established law.

48. On information and belief, SIS OFFICER S. EIRICH instructed his subordinate to commit the above indicated violations of Plaintiff's constitutional rights in retaliation for Plaintiff exercising his First Amendment rights as indicated above. Further evidence of this is the fact that S. EIRICH and another officer present (named BECK) on 5-27-2020 in the LT's office, repeatedly made references to statements Plaintiff made in his email correspondence to TOROK's lawyer, Adam Carro and to Plaintiff's paralegal, Jennifer Alexander.

49. Defendant S. EIRICH's actions infringed upon Plaintiff's First, Fifth, and Sixth

-17-

Amendment rights.

Additional First and Fifth Amendment violations

50. Defendant MAIL ROOM OFFICERS have repeatedly and consistently opened and read Plaintiff's mail from federal judges, state judges, and attorneys in violation of 28 C.F.R. section 540.14(a), section 540.18(a) and BOP Program Statement No. 5265.08, section 13(a).

51. During the last year MAIL ROOM OFFICERS have opened and read dozens of Plaintiff's "special mail" also known as legal mail outside his presence and after Plaintiff had submitted requests to both the warden and the MAIL ROOM OFFICERS to cease doing so.

52. On the following dates, Plaintiff received special mail from BOP staff which was opened and read from the United States District Court for the Western District of Pennsylvania:

-18-

- 4-10-2020
- 4-13-2020
- 4-20-2020
- 4-28-2020
- 1-27-2020
- 3-6-2020
- 4-23-2020
- 11-3-2020
- 2-16-2020
- 9-29-2019

53. On the following dates, Plaintiff received special mail from BOP staff which was opened and read by MAIL ROOM OFFICERS sent from the Superior Court of California, County of Orange:

- 9-25-2019
- 1-26-2020

54. On the following dates, Plaintiff received special mail from BOP staff which was opened and read by MAIL ROOM OFFICERS sent from the United States District Court for the Central District of California:

-19-

- 8-19-2019
- 9-19-2019
- 8-4-2019

55. On the following dates, Plaintiff received special mail from BOP staff which was opened and read by MAIL ROOM OFFICERS sent from the United States District Court for the Eastern District of California:

- 9-26-2019
- 10-13-2020

56. On 9-2-20 & 9-20-19, Plaintiff received mail from the United States Court of Appeals for the Ninth Circuit which was opened and read by MAIL ROOM OFFICERS. On the face of said mail parcels were the words: "LEGAL MAIL - SPECIAL MAIL" and "OPEN IN THE PRESENCE OF THE ADDRESSEE."

57. On 6-3-2020, Plaintiff received mail from the U.S. District and Bankruptcy Court for the District of Columbia which was opened and read by MAIL ROOM OFFICERS.

-20-

58. On 11-23-19, BOP staff delivered mail to Plaintiff which was opened and read outside his presence by MAIL ROOM OFFICERS and sent to him as special mail by the United States District Court in Phoenix, AZ.

59. On 1-15-2020 and 1-27-2020, Plaintiff received special mail from Erin J. Radekin, Attorney at Law from BOP staff that was opened and read outside of his presence by MAIL ROOM OFFICERS. The envelope for each parcel was clearly marked "CONFIDENTIAL LEGAL MAIL" above the inmate address and indicated that Ms. Radekin is an attorney by the words "Attorney at Law" being on the face of the parcel.

60. On 1-21-20, Plaintiff received legal mail from Nicole Cahill which was opened and read by MAIL ROOM OFFICERS outside of his presence. Cahill is an attorney and said mail parcel had the words "Attorney at Law" and "LEGAL MAIL" on the face of the envelope. Attorney Cahill sent another identically marked mail parcel to Plaintiff which he received on 1-20-2020 opened and

-21-

read by MAIL ROOM OFFICERS outside of Plaintiff's presence.

61. On 4-27-2020, Plaintiff received legal mail from the Law Office of Marshal Dennehey, Warner Coleman & Goggins in which the MAIL ROOM OFFICERS opened and read outside his presence.

62. All of the mail parcels described above were opened and read by Defendant MAIL ROOM OFFICERS outside of Plaintiff's presence though each parcel was special mail as defined by 28 CFR 540.19 with the sender marking the mail in compliance with the BOP Program Statement applicable to legal mail.

63. On information and belief, MAIL ROOM OFFICERS unconstitutional actions articulated above are a form of retaliation for Plaintiff's "jailhouse lawyering" activities and FOIA requests directed to FCI Cumberland prison staff concerning mail parcels as well as Plaintiff's complaints concerning the unlawful handling of his mail.

64. Attachment I are Freedom of Information Act ("FOIA") requests that Plaintiff submitted to the BOP which likely led to the Defendant MAIL ROOM OFFICER's acts described above which are in retaliation. The BOP's Program Statement requires Staff to keep copies on file of any inmate mail that the prison has returned to sender, however, MAIL ROOM OFFICER's are not in compliance with this rule; they reject Plaintiff's mail without legal cause.

## FOIA Requests

65. The attached FOIA requests made in June and September have not resulted in an actual search for responsive records nor have any responsive records been released.

66. On June 25, 2019, Plaintiff made a FOIA request to the B.O.P. which included all of the required biographical information to trigger a search pursuant to 5 USC 552 and 552(a). The BOP responded by acknowledging receipt but never conducting the search for

-23-

Plaintiff's records.

67. On or about August 2019, Melissa Washington, Plaintiff's case manager, told him that he may look at his inmate central file but he cannot receive or make any copies of his PreSentence Report—BOP Program Statement No. 1351.05.

68. BOP staff refuse to comply with FOIA law which authorizes a FOIA requester to obtain not only access but a _copy_ of any responsive records.

69. In retaliation for Plaintiff's jailhouse lawyering, Melissa Washington and Defendant MAIL ROOM OFFICERS refuse to make any search for responsive records.

## Claims for Relief

70. The actions of Melissa Washington, S. EIRICH, and MAIL ROOM OFFICERS in refusing to conduct a reasonable search for records and allow Plaintiff a copy of responsive records to his FOIA request is a violation of 5 U.S.C. 552 and 552(a).

- 24-

71. The actions of Defendants S. EIRICH, ALL MAIL ROOM OFFICERS and ONE UNKNOWN SIS OFFICER in forming an agreement to prevent Plaintiff from obtaining his mail constitute a civil rights conspiracy.

72. The actions of ALL MAIL ROOM OFFICERS in continuously obstructing, censoring, opening and reading Plaintiff's special mail from Courts and lawyers is an infringment upon his right to free speech under U.S. Constitutional Amendment I and court access under U.S. Constitutional Amendment V.

73. The actions of Defendant ONE UNKNOWN SIS OFFICER in opening and reading Plaintiff's properly marked incoming special mail from his counsel constitutes an infringment upon his rights to petition and correspond with counsel, access to the courts, his right to counsel and his right to free speech, under the First, Fifth, and Sixth Amendment to the U.S. Constitution.

74. BOP Defendant's Program Statement No. 1351.05 which Melissa Washington relied upon to deny Plaintiff a copy of his Inmate Central File to include his PSR is in conflict with 5 U.S.C. 552 and 552(a) (FOIA) which authorizes inmates to receive a _copy_ of their responsive records.

75. The DOJ and BOP's refusal to conduct a search for responsive records upon Plaintiff's lawful FOIA requests is a violation of the Freedom of Information Act law.

76. Warden J.R. BELL's failure to train the MAIL ROOM OFFICERS and failing to act on information indicating that unconstitutional acts were occurring indicates deliberate indifference and is a violation of Plaintiff's constitutional rights under the First, Fifth, and Sixth Amendments.

### Relief Requested

WHEREFORE, Plaintiff requests that the court grant the following relief:

-26-

A. Issue a declaratory judgment stating that:

1. The MAIL ROOM OFFICERS opening and reading Plaintiff's special mail from the courts constituted a violation of his rights under the First and Fifth Amendment to the U.S. Constitution.

2. The Freedom of Information Act requires the BOP to provide Plaintiff with a copy of his Inmate File to include his Pre Sentence Report.

3. The MAIL ROOM OFFICERS censoring and arbitrarily returning to sender, Plaintiff's correspondence violated his rights under the First Amendment.

B. Issue an injunction ordering MAIL ROOM OFFICERS to:

1. Cease and desist from opening and reading Plaintiff's special mail from courts and lawyers outside his presence.

2. Cease and desist from censoring his social mail unlawfully.

3. Process all of Plaintiff's mail in accordance with the applicable B.O.P. Program Statement.

-27-

C. Issue an injunction enjoining the BOP to
   1. Conduct a reasonable search for records responsive to Plaintiff's FOIA requests.
   2. Allow Plaintiff to obtain a copy of his PSR in response to his FOIA request.
D. Award compensatory damages jointly and severally against:
   1. ALL MAIL ROOM OFFICERS OF FCI CUMBERLAND prison for violation of Plaintiff's rights by willfully opening and reading his legal/special mail outside his presence.
   2. ALL MAIL ROOM OFFICERS OF FCI CUMBERLAND prison for censoring Plaintiff's social mail without lawful cause by returning to sender.
   3. ALL MAIL ROOM OFFICERS OF FCI CUMBERLAND prison for conspiring to violate Plaintiff's civil rights under the First Amendment by retaliation in the form of censoring his mail without legal cause.
   4. ONE UNKNOWN SIS OFFICER OF FCI CUMBERLAND for willfully opening, reading, and obstructing the delivery of Plaintiff's properly marked special mail on May 27, 2020.
   5. Defendant SIS OFFICER S. EIRICH for conspiring to violate Plaintiff's constitutional

28

rights by censoring and obstructing the delivery of Plaintiff's special mail along with MAIL ROOM OFFICERS and UNKNOWN SIS OFFICER.

E. Award nominal damages jointly and severally against all defendants for First and Fifth Amendment violations of Plaintiff's rights.

F. Award punitive damages in the following amounts:
   i. $1,000 each against defendants S. EIRICH, UNKNOWN SIS OFFICER, WARDEN J.R. BELL, and ALL MAIL ROOM OFFICERS OF FCI CUMBERLAND PRISON.

G. Grant such other relief as it may appear plaintiff is entitled.

Dated: 6-8-2020

I declare under penalty of perjury that the foregoing is true and correct.

CHARLES HEAD
Prisoner no. 45494-112
FCI Cumberland, POB 1000
Cumberland, Md. 21501-1000

-29-