## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CHARLES HEAD,                              *

Plaintiff                                 *

v                                         *           Civil Action No. CCB-20-1835

ASSISTANT WARDEN SAMPLE,                   *
WARDEN J.R. BELL,
S. EIRICH,                                 *
OFFICER K. LILLER,
U.S. DEPT. OF JUSTICE,                      *
FEDERAL BUREAU OF PRISONS,
OFFICER CLARK,                             *
OFFICER DELARAMA,
OFFICER WILMNER,                           *
OFFICER CANNON,
OFFICER BOOTH, and                         *
OFFICER BOCH,
                                          *
Defendants

                               ***

## <u>MEMORANDUM OPINION</u>

Self-represented plaintiff Charles Head, currently incarcerated at the Federal Correctional Institution in Cumberland, Maryland ("FCI Cumberland"), brings this civil action pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), claiming that the defendants retaliated against him and denied him access to courts by obstructing, opening, reading, and arbitrarily returning his mail, and by refusing to provide copies of requested records pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). (ECF No. 1.) He seeks a declaratory judgment acknowledging that the defendants violated his constitutional rights in handling his mail and stating that FOIA requires the defendants to provide him with copies of requested documents. (*Id.* at 27.) Mr. Head also seeks injunctive relief as well as compensatory, nominal, and punitive damages. (*Id.* at 27–29.)

On October 15, 2020, the defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 24.) Mr. Head filed a response in opposition (ECF No. 27), to which the defendants replied (ECF No. 28). A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons explained below, the court will grant the defendants' motion as to Mr. Head's retaliation and access to courts claims and deny it without prejudice as to Mr. Head's FOIA claims. Because the FOIA claims at issue here comprise a small subset of FOIA claims being litigated by Mr. Head in the United States District Court for the District of Columbia, *Head v. United States Department of Justice*, Civil Action No. 1:20-cv-01163-TSC (D.D.C.), this case shall be transferred to that court for all further proceedings regarding the FOIA claims.

## Background

In his verified complaint, Mr. Head alleges that in April 2020, his case manager directed him "not to further assist inmates in filling out paperwork." (Compl., ECF No. 1 ¶ 13.) Nonetheless, Mr. Head subsequently assisted his cellmate in submitting a written complaint to the Warden and "helped him by writing his declaration for use at a [disciplinary] hearing." (*Id.* at ¶¶ 16, 21.) Mr. Head claims that as a result of his actions in helping his cellmate, the defendants retaliated against him by obstructing his mail. (*Id.* at ¶ 28.) Specifically, he alleges that he never received a parcel sent by his grandmother, or "special mail" sent by an attorney, and that mail sent by a paralegal was returned to the sender, all without notice to Mr. Head. (*Id.* at ¶¶ 30–32.) Mr. Head also claims that officers routinely open and read legal or special mail intended for him outside of his presence, as retaliation for his "jailhouse lawyering." (*Id.* at ¶¶ 50–63.)

Mr. Head further claims that on May 27, 2020, Officer Liller opened his legal mail, read the contents with another officer, and refused to deliver it. (*Id.* at ¶ 33.) Plaintiff was brought to the officers, some of whom asked if he had been helping individuals with legal work and informed

him that he was on mail restriction and "was not allowed to have the material." (*Id.* at ¶¶ 34–40.) Officer Liller then told Mr. Head that the mail was being returned to sender despite the sender's direction that it should be delivered to Mr. Head. (*Id.* at ¶¶ 44–45.) According to Mr. Head, the defendants' retaliatory actions amount to violations of the First and Sixth Amendments, and denial of access to courts under the Fifth Amendment. (*Id.* at ¶ 47.)

Next, Mr. Head states that on June 25, 2019, he submitted a FOIA request for records, but the Bureau of Prisons ("BOP") never conducted the search for relevant documents. (*Id.* at ¶ 66.) Mr. Head claims that on or about August 2019, his case manager retaliated against him for "jailhouse lawyering" by telling him that he could view his inmate central file but could not receive any copies of his presentence report. (*Id.* at ¶¶ 67, 69.) According to Mr. Head, BOP's refusal to provide "not only access but a copy" of requested records violates FOIA. (*Id.* at ¶ 68.)

The defendants acknowledge that Mr. Head submitted a request for his inmate central file and phone recordings, which was received on July 1, 2019. (First FOIA Request, ECF No. 24-3 at 6–7.) By letter dated July 23, 2019, the BOP advised Mr. Head that "the quickest possible access to the requested records" is "a local review" through staff at the institution. (First BOP Letter, *id.* at 10–11.) As to the telephone conversations, the BOP informed Mr. Head that transcripts are unavailable, but audio copies may be provided if "the individual(s) [Mr. Head] conversed with during these telephone conversations forward a signed executed release authorization." (*Id.*)

On September 17, 2019, Mr. Head submitted another FOIA request for "all copies of incoming or outgoing mail" and "all documents related to or memorializing any copies of Charles Head's postal mail." (Second FOIA Request, *id.* at 13.) By letter dated September 23, 2020, the BOP responded to plaintiff stating that "staff thoroughly searched for the records" but located no records responsive to the request. (Second BOP Letter, *id.* at 16–17.) Mr. Head was directed to

3

contact the BOP with any questions or the Office of Government Information Services to inquire about FOIA mediation. (*Id.*) In addition, Mr. Head was informed that if he is not satisfied with the response, he may administratively appeal to the Department of Justice ("DOJ"). (*Id.*) There is no indication that Mr. Head noted an appeal.

Defendants aver that while in BOP custody, plaintiff has filed a total of three administrative remedy ("ARP") appeals, none of which relate to the claims raised in this case. (ARP Appeals, ECF No. 24-2 at 13–4.) Two of those appeals, received on May 15, 2020, and June 7, 2020, pertain to Mr. Head's request to replace the law library computer. (*Id.*)

## Standards of Review

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere

existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## Analysis

A complaint filed pursuant to *Bivens* is a judicially created monetary remedy designed to vindicate violations of constitutional rights committed by federal actors in their individual capacity. *See Hower v. Stewart*, GLR-17-198, 2018 WL 4384150, at *7 (D. Md. Sept. 14, 2018) (citing *Bivens*, 403 U.S. at 395–97 (1971)). To state a *Bivens* claim, a plaintiff must allege that "a federal agent acting under color of his [federal] authority" violated the plaintiff's constitutional rights. *Bivens*, 403 U.S. at 389. Thus, the plaintiff must sue the named defendants in their individual, rather than their official, capacities. *See Funches v. Wright*, 804 F.2d 677 (4th Cir. 1986)[1] (citing *Butz v. Economou*, 438 U.S. 478 (1978)). In a *Bivens* action, the plaintiff may seek money damages against a federal agent acting under the color of their authority for injuries caused by their unconstitutional conduct but may not seek damages against the United States or a federal agency. *See FDIC v. Meyer*, 510 U.S. 471, 484, 486 (1994) ("An extension of *Bivens* to agencies

---

[1] Unpublished opinions are cited for the soundness of their reasoning, not for any precedential value.

of the Federal Government is not supported by the logic of *Bivens* itself."); *see also Doe v. Chao*,

306 F.3d 170, 184 (4th Cir. 2002)).

## I.   Bivens Claims

### a.   Exhaustion

The defendants raise the affirmative defense that Mr. Head has failed to exhaust his

administrative remedies. If the plaintiff's claims have not been properly presented through the

administrative remedy procedure, they must be dismissed pursuant to the Prisoner Litigation

Reform Act ("PLRA"), which in pertinent part provides that:

> No action shall be brought with respect to prison conditions under section 1983
> of this title, or any other Federal law, by a prisoner confined in any jail, prison,
> or other correctional facility until such administrative remedies as are available
> are exhausted.

42 U.S.C. § 1997e(a) (2013).

Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does

not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust

administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See*

*Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d

674, 682 (4th Cir. 2005).

Nevertheless, a claim that has not been exhausted may not be considered by this court. *See*

*Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, 136 S. Ct. 1850,

1856–57 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Id*. at 1856

(citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory

'shall' . . . normally creates an obligation impervious to judicial discretion")).

An inmate must follow the required procedural steps in order to exhaust his administrative

remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50

6

F. Supp. 2d 544, 548 (E.D. Va. 1999). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 93 (internal quotes omitted) (emphasis in original).

Under the PLRA, exhaustion may only be excused if the administrative process is not actually available. *See Ross*, 136 S. Ct. at 1858 (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, though no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725. An administrative procedure is not available when prison officials are "unable or consistently unwilling to provide any relief to aggrieved inmates" such that it effectively "operates as a simple dead end"; the procedure is so "opaque" that it is practically incapable of use; or prison administrators actively thwart inmates from filing grievances. *Ross*, 136 S. Ct. at 1859–60.

The BOP has established an Administrative Remedy Program for inmates to resolve concerns related to their confinement. *See* 28 C.F.R. § 542.10 *et seq*. Inmates must first attempt informal resolution with staff. *See* 28 C.F.R. § 542.13. If an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within twenty calendar days of the date of the occurrence on which the complaint is based. *See* 28 C.F.R. § 542.14(a). If an inmate is not satisfied with the warden's response to the formal complaint, he may appeal, using the appropriate form, to the Regional Director within twenty calendar days of the warden's response. *See* 28 C.F.R. § 542.15(a). If the inmate is still dissatisfied, he may appeal

the Regional Director's response to the Office of the General Counsel, located in the BOP Central Office in Washington, D.C., using the appropriate form. The inmate must file this final appeal within thirty calendar days of the date the Regional Director signed the response. *See id*. An inmate is not deemed to have exhausted his administrative remedies until he has pursued his grievance through all levels. *See* 28 C.F.R. § 542.15(a); *see also Woodford*, 548 U.S. at 90; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943–44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process).

Here, it appears that Mr. Head was aware of the Administrative Remedy Program at FCI Cumberland. However, the record suggests that he did not completely pursue his available administrative remedies. Mr. Head states that he attempted informal resolution with the staff but was unsuccessful, and he claims that staff refused in May 2020 to provide him with the necessary forms for filing a formal complaint — an alleged dead end. (ECF No. 1 at ¶¶ 7–13.) To substantiate this, he presents copies of emails in which he requested copies of BP-8 grievance forms. (ECF No. 6-3 at 2, E-mail from Charles Head to Unit team (May 10, 2020, 11:59 AM); ECF No. 1-14, Attachment A, E-mail from Charles Head to Unit Manager (May 28, 2020, 05:27 PM).) As the defendants note, however, Mr. Head filed two ARP Appeals regarding a separate issue in May and June of 2020, around the time of the incidents giving rise to this complaint.[2] Mr. Head argues that

---

[2] The two ARP grievance forms filed by Mr. Head around that time in 2020 both pertain to replacing the law library computer, and they share an ID number of 1019840; the May 15 grievance's number bears the suffix "-F1" to indicate that it was a formal complaint submitted to the warden via form BP-9, and the June 7 submission bears the suffix "-R1," indicating that it was an appeal to the Regional Director via a BP-10 form. (ECF No. 24-2 at 13–14.) *See* FED. BUREAU OF PRISONS, U.S. DEP'T OF JUSTICE, PROGRAM STATEMENT NO. 1330.18, ADMINISTRATIVE REMEDY PROGRAM at 5 (Jan. 6, 2014), available at https://www.bop.gov/policy/progstat/1330_018.pdf.

the existence of these ARP appeals does not negate his claim not to have received the requested BP-8 grievance form from his unit manager, because he alleges that it is common practice at FCI Cumberland to deny inmates BP-8 grievance forms based on the content of their expected grievances. (ECF No. 1 at ¶¶ 8, 9.) Still, the existence of these contemporaneous grievance filings — both relating to his jailhouse lawyering, which is the alleged cause of his mistreatment — undercuts Mr. Head's assertion that FCI Cumberland staff prevented him from filing an ARP form BP-8 and strengthens the defendants' exhaustion defense. Because there remains some dispute about the BP-8 forms, however, the court will assume without deciding that Mr. Head's failure to exhaust his claims is because the refusal to provide these forms made the administrative exhaustion process "unavailable" to him.

### b. Retaliation

In any event, even if Mr. Head successfully exhausted his administrative remedies, he fails to present a cognizable *Bivens* claim. The Supreme Court has extended *Bivens* beyond the Fourth Amendment to cover just two new contexts: (1) permitting a federal prisoner to pursue a *Bivens* claim raising an Eighth Amendment claim of deliberate indifference to serious medical needs, *see Carlson v. Green*, 446 U.S. 14, 18–19 (1980); and (2) permitting an employee of a member of Congress to bring a *Bivens* action alleging gender discrimination under the Due Process Clause of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228, 248–49 (1979). But "expanding the *Bivens* remedy is now a disfavored judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). Consequently, as the Fourth Circuit recently explained:

> the analytical framework established by the *Ziglar* Court places significant obstacles in the path to recognition of an implied cause of action. First, courts must inquire whether a given case presents a new *Bivens* context. If the context is *not* new . . . then a *Bivens* remedy continues to be available. But if the context is new, then courts must, before extending *Bivens* liability, evaluate whether there are

special factors *counseling hesitation* in the absence of affirmative action by Congress. If any such special factors do exist, a *Bivens* action is not available.

*Earle v. Shreves*, 990 F.3d 774, 778–79 (4th Cir. 2021) (cleaned up). The Supreme Court has never recognized a First-Amendment-based *Bivens* remedy in any context. *Id.* at 779. Mr. Head's First Amendment retaliation claim therefore presents a new context for *Bivens* purposes.

In *Earle*, the Fourth Circuit declined to extend the *Bivens* remedy to include a First Amendment retaliation claim. *Id.* at 781. The court hesitated to expand the scope of *Bivens*, given that (1) the plaintiff had full access to remedial mechanisms established by the BOP and (2) recognition of a *Bivens* remedy "would work a significant intrusion into an area of prison management." *Id.* Likewise, here, Mr. Head is not completely without remedy, and the issue regarding the mail policy at FCI Cumberland is best left to correctional experts. *See id.* As *Bivens* does not extend to include the First Amendment retaliation claim asserted by plaintiff, that claim will be dismissed.

### c. Access to Courts

Mr. Head has also failed to state an access to courts claim. "Whether an access [to courts] claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002). That actual injury must have hindered the plaintiff's ability to pursue a nonfrivolous or arguable legal claim. *See id.* at 416. The right of access "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 415. "It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Id.*

Mr. Head has not identified the claim for relief underlying the access to courts claim. He has not described the "special mail" mail he was expecting, nor has he indicated whether the legal documents in the incoming parcels pertained to his own cases. Rather, the record is replete with evidence that he was acting as a jailhouse lawyer for other inmates at FCI Cumberland. As Mr. Head has not identified an underlying cause of action, he fails to state a constitutional claim for denial of access to courts.

## II.    FOIA

On May 1, 2020, prior to filing the complaint in this case, Mr. Head filed a complaint in the United States District Court for the District of Columbia against the DOJ and the Internal Revenue Service ("IRS") alleging a violation of FOIA. *Head*, *supra*, Civil Action No. 1:20-cv-01163-TSC (D.D.C.) at ECF 1. Plaintiff claimed that many of his FOIA requests were not properly addressed, including seven submitted to the DOJ; one to the Bureau of Alcohol, Tobacco, Firearms and Explosives; two to the United States Marshal Service; four to the Federal Bureau of Investigation; three to the IRS; and five to the BOP, including the two raised in this case. *Id.* That case is still pending in the District of Columbia, where counsel for the IRS recently noted that "the Maryland FOIA action involves a narrower subset of the potentially responsive records at issue in this FOIA action." August 12, 2021 Status Report, *id.* at ECF No. 31, ¶ 5. Therefore, the remainder of plaintiff's complaint regarding FOIA claims shall be transferred to the United States District Court for the District of Columbia for all further proceedings.

**Conclusion**

Defendants' motion will be granted in part and denied without prejudice in part. Plaintiff's retaliation and access to courts claims will be dismissed, and the remainder of the complaint regarding FOIA claims will be transferred to the United States District Court for the District of Columbia for all further proceedings.

A separate Order follows.

 9/23/2021                                                                  /s/
Date                                                       Catherine C. Blake
                                                           United States District Judge

12